In the Matter of the ESTATE OF Rae Wintroub EPSTEIN, Deceased.

Sam EPSTEIN, Appellee/Cross–Appellant,

v.

Edward WINTROUB, Executor of the Estate of Rae Wintroub Epstein, and Individually, Appellant/Cross–Appellee.

No. 95–1683.

Court of Appeals of Iowa.

Dec. 20, 1996.

Daryl L. Hecht and Larry A. Storm of Crary, Huff, Inkster, Hecht & Sheehan, P.C., Sioux City, for Appellant/Cross–Appellee.

John R. Mugan of Klass, Hanks, Stoos, Stoik, Mugan, Villone & Phillips, L.L.P., Sioux City, for Appellee/Cross–Appellant.

Heard by STREIT, P.J., and VOGEL, J., and SCHLEGEL, S.J.*

VOGEL, Judge.

Rae Epstein died on September 7, 1994, survived by her husband of fifteen years, Samuel, and a son, Edward, from a previous marriage. During the administration of Rae's estate, several issues arose which were tried in a declaratory judgment action. Edward appeals and Samuel cross-appeals. Edward contends: 1) Samuel elected to take under the will; 2) the residence was held as tenants in common; 3) the automobile and diamond ring were not assets of the estate; and 4) Samuel should not have been given a spousal allowance. Samuel contends his spousal allowance should have been greater based on assets in the decedent's revocable trust.

**I. Scope of review.** Our standard of review is de novo. *In re Palmer's Estate*, 259 Iowa 1076, 147 N.W.2d 36 (1966).

**II. The will.** A summary of the provisions of Rae Wintroub Epstein's will pertinent to this appeal are:

1. All jewelry, silver, china, crystal, bric-a-brac, paintings and other personal effects given to Edward.

2. All furniture, furnishings and appliances, owned separately by Rae but located in the residence, to Edward, subject to the right of Samuel to use during his lifetime.

3. Remainder, both real and personal, to Edward, subject to a life estate in the residence in Samuel.

**III. Election to take under the will.** Iowa Code sections 633.236 through 633.246 provide the mechanism for a surviving spouse to elect to either take or not take under the will. Shortly after Rae's death, some of Rae's relatives went to Samuel's

* Senior judge from the Iowa Court of Appeals serving on this court by order of the Iowa Supreme Court.

house to pick up some of Rae's personal effects. When the relatives informed Samuel they were taking "all" the personal property, Samuel refused their request. Following a phone call to Edward, one of the relatives, Edward's daughter, also a practicing attorney, prepared a hand written statement which said:

I, Sam Epstein, did not give Jeanie Wintroub Eddie Wintroub's mother's china and other personal effects because I was following the will of Rae (Abraham Wintroub) Epstein.

Edward claims this and similar statements made by Samuel that afternoon amounted to an affirmative election by Samuel to take under the will.

Approximately two months following Rae's death, Sam filed an Election of Surviving Spouse in Relation to Will in which he,

... voluntarily elects to **refuse to take** under the provisions of the will of said decedent heretofore admitted to probate in this cause, and directs that this election be entered on the proper records of the Court.

*Id.* (Emphasis added.) Edward argues this election is invalid as Samuel had previously elected to take under the will.

 Once an election has been made, it cannot be revoked. Iowa Code § 633.246 (1995). However, in order for an election to be made, a surviving spouse must first be aware of the extent of the decedent's estate. Further, the surviving spouse must plan to take under the will or opt for the statutory elective share while realizing these are two distinct and inconsistent rights. *See Schubert v. Barnholt,* 177 Iowa 232, 158 N.W. 662 (1916). The election may be made through express words or made in any other manner that clearly indicates an election has been made. *Arnold v. Livingston,* 157 Iowa 677, 139 N.W. 927, 929 (1913). The evidentiary standard of electing to take under a will rather than pursuant to a statutory share is "clear and satisfactory." *In re Heuberger's Estate,* 191 Iowa 59, 181 N.W. 773 (1921) (holding that even though there was evidence

the surviving spouse stated to others he would take under the will, he was not deemed to have elected to take under the will).

Samuel testified that when the relatives came to his house to take some personal property, he did not know the extent of the assets of the estate. The inventory of assets had not yet been filed. Although Samuel had met with his attorney prior to that afternoon, he did not intend to be making an election against the will by signing a handwritten statement. The statement he signed was prepared by an attorney, on the spur of the moment, while Rae's relatives were gathered in Samuel's home, waiting to take some personal property. Samuel signed the hastily prepared note without benefit of counsel. The trial court was correct in not construing this event as an election to take under the will nor complying with the requirements of Iowa Code sections 633.236 and 633.245.

██ *IV. Title to the condominium residence.* The parties differ as to whether Samuel and Rae held title to the condominium as tenants in common, or whether title was held in joint tenancy. As tenants in common, a one-half interest would be included as an asset of Rae's estate. As joint tenants, Rae's interest would have passed to Samuel outside of the will. The trial court ruled it was a joint tenancy.

In 1983, Samuel signed a real estate contract as purchaser for the condominium residence of Rae and Samuel. The granting clause of the contract stated,

... Fred Davenport, Jr. and Martha Davenport, husband and wife, sellers, to Sam E. Epstein and Rae Epstein, as tenants in common, ... buyers.

This conveyed equitable title to Sam and Rae while legal title remained in the sellers. In 1987 Samuel and Rae gave a mortgage to Souixland Credit Union as security for a note. In the same transaction, Siouxland Credit Union[1] executed a warranty deed with this language:

---

1. Siouxland Credit Union had legal title to the real estate as the Davenports had conveyed their interest to the credit union.

Siouxland Credit Union ... hereby convey(s) unto Samuel E. Epstein and Rae Epstein, husband and wife as Joint Tenants ... [the real estate]. This deed is executed in compliance and fulfillment of a real estate contract in which the grantee was the purchaser.

Edward argues that because the deed was given in fulfillment of the contract, the tenancy created in the contract prevails in the deed. That argument misapplies the law in Iowa. The general rule is a deed in fulfillment of a real estate contract merges the provisions of the contract into the deed. 26 C.J.S. *Deeds* § 91(c) (1956). "The execution of the deed presumably is the consummation of the contract, and parties thereafter look only to the *deed* for conditions of the transfer; and, where merger of the contract into the deed is denied, the burden of proof rests on the party so denying, to show that a merger was not intended." *Gray v. Van Gordon,* 187 Iowa 835, 174 N.W. 588 (1919). (Emphasis added.) Therefore, we look to the language in the deed to determine the tenancy.

Section 557.15, Code of Iowa, provides:

Tenancy in common. Conveyances to two or more in their own right create a tenancy in common, unless a contrary intent is expressed.

The deed used a short recitation, "husband and wife as joint tenants." Edward argues the simple use of the words, "as joint tenants" is insufficient to create a joint tenancy with right of survivorship. We disagree.

The expanded language, "husband and wife as joint tenants with full rights of survivorship and not as tenants in common," would have more clearly created a joint tenancy. The longer recitation reinforces the nature of the tenancy with reference to survivorship rights. It also specifically sets out what is not intended, a tenancy in common. An expanded recitation is preferred to overcome the presumption of a tenancy in common and to clear up any ambiguities. *Switzer v. Pratt,* 237 Iowa 788, 23 N.W.2d 837 (1946). However, when such clarity is not present, we look to the language used and to the intent of the parties. *Id.*

Our supreme court in the case of *Albright v. Winey,* 226 Iowa 222, 284 N.W. 86 (1939), construed a deed containing this language,

... real estate taken by said grantees jointly, .... to have and to hold the above described real estate to the said grantees, their assigns, heirs, and devisees forever.

The court held such language did not create a joint tenancy in the grantees in part because the words, "to said grantees, their assigns, heirs, and devisees forever," completely negated any intent to create a joint tenancy. In contrast, the deed to Samuel and Rae contained no competing language to negate the joint tenancy. Any language clearly showing intent to make grantees in written instrument of conveyance or ownership as joint tenants is sufficient for such purpose. *In re Miller's Estate,* 248 Iowa 19, 79 N.W.2d 315 (1956).

The court in *Albright* also looked for any competent proof, including extrinsic evidence, to determine the nature of the tenancy. Finding only self-serving statements of intent from the one who would benefit from the joint tenancy, the court upheld the tenancy in common. *Id.* In *Conlee v. Conlee,* 222 Iowa 561, 269 N.W. 259 (1936), extrinsic evidence, in the form of statements of intent made by the decedent, were allowed in evidence to prove the existence of a joint tenancy. Similarly, proof of Samuel and Rae's intentions was admitted through the testimony of a loan officer for Siouxland Credit Union. The loan officer testified as to his conversations with both Samuel and Rae and their interest in having the condominium pass to the survivor when one of them died. While neither Samuel nor Rae sought legal advice on the way the deed should be drafted, the evidence provided by the language of the deed and the circumstances leading up to the conveyance does support the creation of a joint tenancy.

Evidence to the contrary is noted from the provision in Rae's will, executed one-and-a-half years after the credit union gave the deed to Samuel and Rae. Rae's will gave Samuel a life estate in her interest in the real estate. When a conflict is apparent

in a deed and a will, the document of conveyance controls. *Conlee v. Conlee*, 222 Iowa 561, 269 N.W. 259 (1936). The death of a joint tenant terminates his interest and leaves no part of the joint tenancy property subject to his will. *Id.* Attempted testamentary disposition does not defeat nor sever joint tenancy. *Hyland v. Standiford*, 253 Iowa 294, 111 N.W.2d 260 (1961). We therefore find the trial court was correct in ruling the title to the condominium was held in joint tenancy, passed immediately to Samuel as the surviving joint tenant, and was not to be included as an asset of Rae's estate.

**V. Other assets.** Edward next contends an eighteen-carat diamond ring, valued at $19,540, and a 1991 Jaguar automobile, valued at $23,000, should not have been included in the estate. The ring was purchased with cash from the Rae Wintroub Epstein Trust. Once the funds to purchase the ring were withdrawn from the trust, absent any documentation such as a promissory note back to the trust, the funds were no longer part of the trust. Hence, any purchases made with the funds and retained by Rae, were assets of Rae's and upon her death became part of her estate.

Additionally, the Jaguar, although purchased for his mother by Edward, was titled in Rae's name. Edward held no ownership interest in the car. *See* Iowa Code § 321.45(2) (1995). The trial court was correct in finding the Jaguar was a gift from Edward to his mother and was to be included in the inventory of assets. *See Stonewall v. Danielson*, 204 Iowa 1367, 217 N.W. 456 (1928).

**VI. Spousal allowance.** We review for an abuse of discretion. *In re Estate of Tollefsrud*, 275 N.W.2d 412, 415 (Iowa 1979). Edward claims Samuel was not entitled to a spousal allowance as Rae did not support him during her life. This he claims disqualifies Samuel from any such benefits from her estate. Samuel argues he should have received more of an allowance as the court should have considered the assets of the Rae Wintroub Trust in making its determination of need and assets.

Iowa Code section 633.374 states:
The court shall, upon application, set off and order paid to the surviving spouse, as part of the costs of administration, sufficient of the **decedent's property** as it deems reasonable for the proper support of the surviving spouse for the period of twelve months following the death of the decedent.... **The court shall take into consideration the station in life of the surviving spouse and the assets and condition of the estate.** (Emphasis added.) *Id.* (Emphasis added.) The trial court allowed Samuel a lump sum payment of $2000. In making that determination, the trial court considered Samuel's age, the lifestyle Samuel and Rae enjoyed prior to her death, their income and expenses, the extent of Rae's estate, and what assets Samuel was left with to support himself. We find the court did not abuse its discretion in awarding a spousal allowance to Samuel.

To include trust assets in determining a spousal allowance leads to an impermissible reading of the statute. Iowa Code section 633.374 clearly provides the allowance is to be from the "decedent's property" and "assets ... of the estate." The trust is a separate entity, controlled by the trustee, not the executor. Even though they may be the same person, the executor and trustee wear separate hats and bear separate fiduciary responsibilities. To commingle the assets of the estate and the trust run contrary to the purpose of establishing two separate entities. Samuel makes an equitable argument if Iowa Code section 633.374 was intended to prevent a person from disinheriting a spouse, then transferring assets to a revocable trust defeats the intent of that statute. He further points out creating and funding a revocable trust with the bulk of one's assets effectively puts those assets out of reach of a surviving spouse for purposes of claiming a spousal share under section 633.374. While an argument to include the trust assets in determining a spousal allowance is compelling from an equitable standard, it is not Iowa law. We find no abuse of discretion in the trial court's exclusion of the trust assets in making the spousal allowance.

**AFFIRMED.**